[No. 8,405.   Department One.—December 19, 1884.]

# OLD SAUCELITO LAND AND DRY DOCK CO., Appellant, *v.* THE COMMERCIAL UNION ASSURANCE COMPANY, Respondent.

66  253
82  270
66  253
83  263

ARBITRATION—JURISDICTION OF COURTS.—A general provision that all disputes which may arise in the execution of a contract shall be decided by arbitrators, does not deprive the courts of jurisdiction; but the parties to a contract may fix on any mode they think fit to liquidate damages in their nature unliquidated, and in such case no recovery can be had in the courts until the prescribed method has been pursued, or some valid excuse exists for not pursuing it.

ID.—FIRE INSURANCE—CONSTRUCTION OF POLICY—CONDITION PRECEDENT.—Where a fire insurance policy contained a stipulation "that in case of difference of opinion as to the amount of loss or damage, such difference should be submitted to the judgment of two disinterested and competent men, mutually chosen, who, in case of disagreement, shall select a third, whose award shall be conclusive and binding on the parties," *held*, that the submission to arbitration is a condition precedent, and that until such submission is made, or a fair effort on the part of the insured to obtain it, no cause of action arises.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*P. G. Galpin*, for Appellant.

*T. C. Van Ness*, for Respondent.

McKinstry, J.—The defendant, an English insurance company, insured plaintiff upon a certain building in Marin county, in a sum not to exceed $1,500, and received the premium. The building was destroyed by fire.

The policy of insurance provided : " The capital stock and funds of the company shall be subject and liable to pay to the said insured, his, or her, or their, executors and administrators, all the damage and loss which the insured shall suffer by fire on the property hereinbefore mentioned, not exceeding, on each item respectively, the sum hereinbefore declared to be insured thereon, and not exceeding the whole sum of fifteen hundred dollars, United States gold coin, but subject always to the conditions and stipulations indorsed hereon, and which constitute the basis of this insurance."

Among the conditions and stipulations indorsed were the following :

" VIII.   That persons insured by this company sustaining any loss or damage by fire, shall forthwith give notice of such loss, and shall, within a reasonable time, render an accurate and particular account of their loss or damage respectively, as the nature and circumstances of their respective cases will admit ; such account of loss to have reference to the value of the property destroyed or damaged immediately before such fire ; and shall verify the same by solemn declaration or affirmation before a justice of the peace, and shall produce such other evidence as the directors or their agents may reasonably require ; and until such declaration or affirmation, account and evidence are produced, the amount of such loss, or any part thereof, shall not be payable or recoverable.   And if there appear any fraud or false declaration, or that the fire shall have happened by the procurement or willful act, means or connivance of the insured or claimants, he, she, or they shall be excluded from all benefit under this policy.

" IX.   That in every case of loss or damage for which the said company shall be liable, the same on being duly proved, and the accounts adjusted, shall either be paid immediately, or the said company shall have the option, where the insurance may be on goods, to supply the insured with the like quantity of goods of the same sort and kind, and of equal value and good-

ness, with those destroyed or damaged by fire ; or where the insurance may be on houses and buildings, the said company shall have the option, with all convenient speed, to rebuild or repair and reinstate the same, and put them into as good and substantial condition as they were in at the time when such fire happened.

" X. That in case of difference of opinion as to the amount of loss or damage, such difference shall be submitted to the judgment of two disinterested and competent men, mutually chosen, (who in case of disagreement shall select a third) whose award shall be conclusive and binding on both parties."

The plaintiff in its complaint, after stating facts showing that a difference arose as to the amount of loss, adds :

" That plaintiff thereupon, and on request of defendant, chose one S. M. Hill, and the defendant chose one A. A. Snyder, to whose judgment the plaintiff and defendant mutually submitted all differences of opinion between the plaintiff and defendant, resulting from or growing out of said loss, and all difference of opinion as to the amount of said loss, and said plaintiff notified said Hill to arbitrate said amount of loss. That said Hill and Snyder met to arbitrate said amount, but failed to agree upon the amount of said loss, or any amount as due from defendant to plaintiff by reason of said loss, and failed to adjudicate upon any differences between plaintiff and defendant growing out of said loss—and failed to select a third person, as provided in section x. of the conditions, annexed to the policy of insurance, to assist in determining said amount, and failed to make any award ; and thereupon said plaintiff, after waiting a reasonable time, withdrew from said arbitration, and notified the defendant that it had so withdrawn prior to the commencement of this action, and no award has ever been made." The answer denies these averments.

The court below found : " That no arbitrators were appointed or mutually chosen by the parties to this action, to appraise, at its true cash value, or at all, the amount of loss or damage, and that the difference of opinion between plaintiff and defendant had not been submitted, as required by the tenth condition of the policy. That the plaintiff had at no time offered to submit such difference of opinion to arbitration or take any steps

to procure arbitration or award; and that the failure to submit such difference of opinion to arbitration was in no manner the fault or result of any action suffered or taken by defendant, but that, on the contrary, defendant had always been willing to submit such difference," etc.

The finding passed upon the issue. The complaint does not allege that plaintiff offered to submit, etc., and that defendant refused, but on the contrary, that the parties did select arbitrators. If, however, the averments could be construed as averments that plaintiff had sought to have the matter, as to amount of loss, submitted, the court found that plaintiff at no time offered to submit it, or took any steps to procure such submission, etc.

The evidence justified the findings of the court.

The appellant contends:

First.—The agreement to submit the difference of opinion as to the amount of loss or damage to the judgment of two disinterested men, etc., whose award should be conclusive and binding (in the absence of an agreement that the arbitrators shall be the exclusive and only tribunal to which the parties will appeal), does not debar the aggrieved party from appealing to the courts.

Second.—The promise of defendant being to pay damages incurred by fire—not an award—its contract is broken by its failure to pay such damages. It is well settled, that a general provision that all disputes which may arise in the execution of a contract shall be decided by arbitrators, will not be allowed to deprive the courts of their jurisdiction. But the parties to a contract may fix on any mode they think fit to liquidate damages, in their own nature unliquidated; and, in such case, no recovery can be had until the prescribed method has been pursued, or some valid excuse exists for not pursuing it. In the case now here, if the parties made the submission to arbitration a condition precedent to the right to bring an action on the policy, the judgment should be affirmed.

In *Elliott* v. *Royal Exchange Insurance Company*, L. R., 2 Exch. 241, the form of the policy was a covenant by the defendants that their capital stock, etc., should be subject to make good the plaintiff's loss, not exceeding £2200, " according to the exact tenor of the articles hereunto subjoined." One of

the articles subjoined was: "All persons assured by this corporation are, upon any loss or damage by fire, forthwith to give notice thereof to the office in London, or to the known agents of said corporation, and within fifteen days after such fire deliver as particular an account of their loss or damage as the nature of the case may admit, and make proof of the same by their oath or affirmation, and that of their domestics or servants, and by their books of accounts, or such other proper vouchers as may be required; which loss or damage, after the same shall be adjusted, shall immediately be paid in money by the said corporation without any deduction; or they shall at their option forthwith provide or supply the assured with the like quantity and quality of goods with those burnt or damaged by fire; or at the expiration of sixty days after notice of the said fire, they shall expend in building or repairing any building damaged or destroyed by fire, the sum assured thereon, under the direction of able and experienced workmen, if the loss and damage shall, in their opinion, amount thereto. In case any difference shall arise touching any loss or damage, such difference shall be submitted to the judgment and determination of arbitrators indifferently chosen, whose award in writing shall be conclusive and binding on all parties; but if there shall appear any fraud or false swearing, the claimant shall forfeit all benefit of claim."

In that case it was urged by counsel, as is contended here, that the provision as to arbitration was no bar to the action, but at most a collateral covenant, on which, if broken, suit could be brought. It was admitted that the question in such case—as held in *Scott* v. *Avery*, 5 H. L. C. 811, and *Horton* v. *Sayer*, 4 H. & N. 643—is whether the provision is a condition precedent to the right of payment, or is only a collateral covenant. The court held that resort must be had to the mode of adjustment by arbitration, before suit could be brought. Kelly, C. B., said: "It appears to me that to decide to the contrary would be to disregard entirely the obvious intentions of the parties, expressed in words which state emphatically that before the loss is paid its amount shall be adjusted." And the same learned judge thus deduces from the cases called to his attention a general rule: "The fair result of the authorities is, that if the contract is in such terms that a reference to a third person is a condition

precedent to the right of the party to maintain an action, then he is not entitled to maintain it until that condition is complied with ; but if, on the other hand, the contract is to pay the loss, with a subsequent contract to refer the question to arbitration, contained in a distinct clause collateral to the other, then that contract for reference shall not oust the jurisdiction of the courts."

Martin, B., and Pigott, B., agreed with the chief baron ; Bramwell, B., differed as to the application of the rules to the case before the court.

In *Scott* v. *Avery* (where Mr. Bramwell, as counsel, argued in favor of the conclusion reached by the House of Lords), the words in the contract were, " the sum to be paid by this association to any suffering member shall, in the first instance, be ascertained by the committee." In *Elliott* v. *R. E. Ins. Co.* they were, that the loss, "after the same shall be adjusted, shall immediately be paid." In the former case the House of Lords held that the ascertainment of the loss by the committee or by arbitration was a condition precedent, and that without such ascertainment the plaintiff had no cause of action. In the latter case the court could not see any distinction which would justify them in holding that the adjustment of the loss, as provided in the articles, was not a condition precedent.

In the case at bar, by express provision of the policy, the defendant's stock and funds are made liable, " subject always to the conditions and stipulations endorsed hereon," etc. Referring to the conditions and stipulations which qualify the general promise to pay in case of loss, we find : The defendant was not bound to pay until the declaration or affirmation, account and evidence therein provided for, should be produced. That on proof of loss *and adjustment of accounts*, the company was bound to pay immediately, or, at its option, to rebuild ; and that, in case of difference of opinion as to the *amount* of loss or damage, such difference should be submitted to the judgment of two disinterested and competent men, mutually chosen, etc.

We think the language of the stipulation brings this case within the principle laid down in the English case above referred to ; that it is the clear meaning of the contract that if the amount of loss cannot otherwise be adjusted to the satisfaction of the

parties, it shall be adjusted by the mode of arbitration therein prescribed; and that until such adjustment, or a fair effort on the part of the insured to obtain it, no cause of action arose.

The rule as to the interpretation of contracts involving the question above considered, is clearly laid down in *Holmes* v. *Richet*, 56 Cal. 307.

Judgment and order affirmed.

ROSS, J., and McKEE, J., concurred.