## SPRINGFIELD F. & M. INS. CO. *et al.* v. HAYS & SON.

No. 5320.   Opinion Filed March 21, 1916.

On Petition for Rehearing, April 18, 1916.

(156 Pac. 673.)

1.   **INSURANCE—Standard Policy—Inspection and Appraisement—Demand—Time for Making.** In a case .where only those clauses of the Standard insurance policy relating to the time of payment of loss and the right to inspection and appraisement of the goods are under consideration, it is **held**, that the right to appraisement and to inspection and re-inspection of the goods must be demanded within a reasonable time from such date 'as the circumstances of each case may show to be the period at which the desirability or necessity of appraisement or inspection of the goods first arises; such reasonable time in no event to be carried beyond the period of 60 days after the receipt of the proof of loss.

2.   **SAME—Reasonable Time—Question for Jury.** The question of what constitutes such reasonable time within the limits above defined is ordinarily one for the jury under proper instructions of the court.

3.   **INSURANCE—Compliance with Book Warranty Clause—What Constitutes.** The "book warranty" clause of the Standard form of insurance policy in use in Oklahoma is complied with by the assured if the set of books kept by him are sufficient to enable a man of ordinary intelligence to ascertain from them, with reasonable certainty, the amount and value of the goods destroyed. ·

*Error from District Court, Garvin County;*

*R. McMillan, Judge.*

Actions by Hays & Son against the Springfield Fire & Marine Insurance Company and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Scothorn, Caldwell & McRill,* for plaintiffs in error.

*Carr & Field,* for defendants in error.

Opinion by BURFORD, C. The defendants in error, Hays & Son, a co-partnership composed of Rosa Belle

Hays and Bert Chester Hays, brought seven separate actions in the district court of Garvin county, Okla., on as many different policies of insurance, two of which were issued by the plaintiff in error Northwestern National Insurance Company, and one each by the other plaintiffs in error. Prior to trial the cases were, by agreement of the parties and proper order of court, all consolidated, and were thereafter proceeded with to final judgment as one case. The policies all contain the following condition, a breach whereof was pleaded in the answer as a defense:

"If fire occur, the insured shall give immediate notice of any loss thereby, in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quality and cost of each article, and the amount claimed thereon.

"The insured, as often as required, shall exhibit to any person designated by this company, all that remains of any property herein described and submit to examination under oath by any person named by this company, and subscribe the same.

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire and the award of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expense of the appraisal and the umpire.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for, and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of loss hereinbefore required have been received by this company, including an award by appraisers when appraisal has been required.

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed herein or added hereto, and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed, by the insured unless so written or attached."

Evidence was introduced that within a reasonable time after the fire notice thereof was given to the insurer, and that some two weeks after the fire the agent of the insured went to Oklahoma City and saw the adjusters or representative of the Springfield Fire & Marine Insurance Company, Michigan Commercial Insurance Company, and the Northwestern National Insurance Company, and re-

quested an adjustment of the loss; that thereafter various requests for an adjustment were made to the local agent of the various defendants; that losses of other parties arising from the same fire which consumed the goods covered by the policies in suit in this case, were adjusted by these companies, but that nothing was done toward adjusting or attempting to adjust the loss incurred by these plaintiffs during a period of about 53 or 54 days after the fire. Plaintiffs then made out their formal proofs of loss and forwarded them to the various insurance companies. About ten days after making the proofs of loss, nothing having still been done toward an adjustment of the loss by the insurance companies, after a wide advertisement a public sale was had of portions of the salvage remaining after the fire. It is not shown that any notice of this sale was brought to the attention of any of the insurance companies, except possibly through the local agent.

Numerous errors are assigned, but the real questions in the case are two:

First, whether or not the action of the insured in selling a portion of the salvage within the time above stated caused such a breach of the policy, under the provisions thereof above set out, as avoided the liability of the insurers. In connection with this it is specifically noted that the effect of the provisions of the policy giving the insurer a right to take over damaged goods was not pleaded as a special defense, and is not argued in the brief and is not considered in this opinion.

The second question is whether or not the evidence showed a sufficient compliance with the book warranty and iron-safe clauses of the Standard policy.

Referring to the first contention, it is insisted by the insurers that the provisions of the policy making the loss payable only after 60 days after "notice, ascertainment, estimate and satisfactory proofs of loss hereinbefore required have been received by this company, including the award by the appraisers when appraisal has been required," give to the insurer a right to demand an appraisal of the property and an inspection and reinspection of the goods at any time within 60 days after the receipt of the proofs of loss. On the other hand, counsel for the insured insists that the policy requires the award of the appraisers, if appraisal has been demanded, to be included in the proof of loss, that the policy further requires such proof of loss to be filed within 60 days after the fire, and that therefore the insurer, if he cares to exercise his right to the appraisement at all, must demand the same within such period that it can be had and the award made in time to allow the insured to file his proof of loss, and to include therein the award of the appraisers, within 60 days after the fire. Counsel for insured further contend that, if this position be not upheld, the most that can be claimed is that the right to the appraisement should be exercised within a reasonable time. If the contention of the insurer be correct, there can be little doubt that the selling of the salvage without the consent of the insurer, thereby rendering an appraisement and inspection and reinspection impossible, would be such a breach of the policy as would avoid the liability of the insurer. *Hamilton v. Insurance Co.*, 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419; *Astrich v. German Amer. Ins. Co.* (C. C.) 128 Fed. 477; *Thornton v. Security Ins. Co.* (C. C.) 117 Fed. 773; *Oshkosh Match Works v. Manchester Fire Assur. Co.*, 92 Wis. 510, 66 N. W. 525; 4 Cooley's Briefs on the Law of Insurance, pp.

3076, 3077; and authorities cited. On the other hand, if the contention of the insured is correct, and there has been no demand within proper time by the insurance companies for an appraisement, there was no breach of the policy by reason of the sale of the salvage, and, having proved a substantial compliance with the terms thereof, the insured is entitled to recover.

In examining the decided cases upon the subject, which, in view of the number of policies litigated, are exceedingly few, it is apparent that the courts have differed widely upon the construction to be given to the terms of these policies. There are decided cases upholding each of the views contended for by the respective counsel, and others taking a middle ground, to which we will hereafter refer.

In *North British Ins. Co. v. Robinett*, 112 Va. 754, 72 S. E. 668, the Court of Appeals of Virginia, considering a policy of practically the same form as the ones in question, said:

"The policy provided that the defendants in error should have 60 days from date of the fire to make out and deliver the proof of loss, and that the loss should not become due until 60 days after the proof of loss had been delivered, including an award by appraisers, if an appraisal should be required. Equal rights were contemplated in the contract to each of the parties thereto, 60 days being given to furnish proof of loss on the part of the insured, and 60 days after the proof of loss had been furnished the insured could demand payment; and, clearly, during all of the last-mentioned 60 days the insurer was to have the right to investigate the amount of the loss and its liability therefor. It is equally as clear that the insurer was given the right, at any time within the 60 days after proof of loss was delivered, to demand an appraisal, which it did.

May on Insurance (4th Ed.) sec. 479; Joyce on Insurance, sec. 3182."

This is the only case which has been called to our attention which directly supports the view taken by the insurer. The difficulty with the case is that it assumes a proposition to be "equally as clear" without pointing out the provisions of the policy which make that conclusion apparent. It assumes a conclusion without giving a basis for it. It quotes as authority for the proposition May on Insurance, and Joyce on Insurance; but an examination of the sections quoted from these works reveals that although they support the first part of the proposition, they have no reference whatever to the time within which an appraisal may be demanded, which is the controlling point in the case at bar.

On the other hand, in support of the position assumed by the insured, the Court of Civil Appeals of Texas, in *Lion Ins. Co. v. Heath*, 29 Tex. Civ. App. 203, 68 S. W. 305, said:

"The fire, as already stated, occurred on the night of January 21, 1901. Plaintiff was required to file his proof of loss within 60 days from that time. This proof of loss was received by appellant on February 27, 1901. No objection was made to it, and no demand for appraisement was made until by letter of appellant dated March 22d, and which reached appellees on March 25th. The court in its charge took the position that if no demand was made by appellant *within 60 days from the date of the fire* for an appraisement, and the proofs of loss were retained by appellant without objection until more than 60 days from such date, appellant was liable. The court's view was that the demand for appraisement, under the provisions of the policy, must have come within 60 days. The construction of the contract was for the court. The policy required

the insured to make proofs of loss within 60 days from the loss. Another of the clauses above copied provides that the 'loss shall not be payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of loss herein required have been received by the company, including an award by appraisers when an appraisal has been required.' Thus it appears that it was contemplated that the appraisal should be demanded within 60 days *from the fire* as the ultimate time, because it was to accompany the proof of loss, which was required to be filed within that time."

The effect of this decision, however, is weakened by the case of *American Central Ins. Co. v. Heath & Blackwell*, 29 Tex. Civ. App. 445, 69 S. W. 235, which was a case arising apparently out of the same fire, and brought by the same parties involved in the case just cited. After referring with approval to the case just cited above, the court then said:

"The plain implication from the terms of the contract is that the demand for appraisement should have been made within 60 days from the time *notice and proofs of loss* were received." (Italics ours.)

Of course, it becomes apparent at once that the notice and proof of loss are two entirely different things, which might be, and probably were, made out and sent in at entirely different times; but the court, after quoting from *Zimeriski v. Insurance Co.*, 91 Mich. 600, 52 N. W. 55, said:

"We think this the correct doctrine, and that appellant, by failing to demand an appraisement within 60 days 'from the time *it received the proof*,' waived its right to the appraisement."

This language leaves it in doubt as to whether the court refers to the proof of loss or to the notice of the fire,

and in any event confuses the doctrine of the former case, which clearly states that the appraisal must be demanded "within 60 days *from the fire* as the ultimate time."

Still another view is that taken in *Firemen's Fund Ins. Co. v. Caye*, 14 Ky. Law Rep. 810, where it is said:

"Where the policy provides that the loss shall be payable within a certain time after the proofs of loss are received, the request for arbitration must be made within that time and not only within that time, but early enough to permit arbitration to be had before the expiration of the time."

This view is also supported in *Zimeriski v. Ohio Farmers' Ins. Co.*, 91 Mich. 600, 52 N. W. 55. Our own view of the matter is that the provisions of the policy for appraisement and for inspection and reinspection of the goods are largely for the benefit of the insurer, and are to enable the insurer, by inspection or reinspection, to determine the value of the goods, possibly something of the cause of fire, and from such inspection to determine the amount which it will offer in settlement of the loss, or whether it will exercise any of the options of the policy made for its benefit. The right to the appraisement and award is to be exercised where there is a disagreement between the insurer and the insured as to the amount due, and is designed to provide a quick and inexpensive way for arriving at an adjustment of the loss. By the language of the policy, which provides that "the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required," it is, in our judgment, not meant that the award of the appraisers must be included in the proof of loss, but rather that the

loss shall not become payable until 60 days after the ascertainment of the loss, and the receipt of proof of loss, or in the event that appraisal has been required, until 60 days after the receipt of the award of the appraisers. That this is the logical construction of the contract appears to be clear, when we consider the fact that there may be no disagreement as to the amount to be paid until after proof of loss is made, and consequently no occasion to demand an appraisement. It is true that in practice generally there is a discussion between the insured and the insurer as to the amount demanded or to be paid, and that it is generally known, before the proof of loss is filed, whether or not appraisement will be necessary to adjust the differences between the parties, but there is no requirement in the policy of such a course of conduct. In many cases it may not be known to the insurer what amount will be demanded by the insured until the receipt of the proof of loss. In fact, the insured may make his proof of loss the next day after the fire, and to hold that the insurer is required to make a demand for appraisement before the filing of the proof of loss seems in such case absurd. In our judgment the true view is that, inasmuch as the time within which the appraisement shall be demanded is not definitely specified in the contract, a reasonable time should be inferred. This view is supported by the consideration that the contract was written by the insurer, and, if the insurer desired 60 days within which to demand an appraisement after the receipt of the proof of loss, it should have said so definitely. It is true that this contract is adopted by law in this state, but it was originally largely the product of the insurance companies. Section 964, Rev. Laws 1910, provides:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except in a contract between a public officer or body as such, and a private party, in which it is presumed that all uncertainty was caused by the private party."

It is likewise the settled rule in this jurisdiction that provisions of an insurance policy will be construed most strongly against the insurer. *Travelers' Ins. Co. v. McConkey*, 127 U. S. 666, 8 Sup. Ct. 1360, 32 L. Ed. 308; *Standard Accident Ins. Co. v. Hite*, 37 Okla. 305, 132 Pac. 333, 46 L. R. A. (N. S.) 986; *Capital Fire Ins. Co. v. Carroll*, 26 Okla. 286, 109 Pac. 535. Section 967, Rev. Laws 1910, also provides:

"If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."

We therefore hold that under those provisions of the Standard form of insurance policy which have been heretofore quoted (it is specially noted that we have considered no others), the insurer must demand appraisement, if at all, within a reasonable time, to be determined by the jury under the circumstances of each case, from the date as the circumstances of each case may show to be the period at which the desirability or necessity of appraisement or inspection of the goods first arises, such reasonable time, in no event, to be carried beyond the period of 60 days after the receipt of the proof of loss, since it is apparent that, if no demand be made within 60 days after the receipt of the proof of loss, the right to the payment of the amount due, if any, becomes absolute, and may not be changed by any subsequent act of the insurer.

This view is not unsupported by authority. In *Grand Rapids Fire Ins. Co. v. Finn*, 60 Ohio St. 513, 54 N. E. 545, 50 L. R. A. 555, 71 Am. St. Rep. 736, the Supreme Court of Ohio said:

"The demand (for an appraisal) must be made in good faith, within a reasonable time after the proof of loss has been furnished, in such direct and explicit terms that a person of ordinary intelligence may fairly understand * * * that a submission to the appraisers for ascertainment of the loss is requested."

In *Winchester v. N. British & M. Ins. Co.*, 160 Cal. 1, 116 Pac. 63, 35 L. R. A. (N. S.) 406, the Supreme Court of California quotes with approval the language of that court in *Case v. Manufacturers' Ins. Co.*, 82 Cal. 266, 21 Pac. 843, 22 Pac. 1083, as follows:

"We think it clear that if the formal proofs had stated a total loss of $4,000 or over, and defendant had failed to demand arbitration within the 60 days, at the expiration of which the loss was, by the terms of the policy, to become payable, this would have amounted to a waiver by the defendant of its rights to make such demand, and the plaintiff would have been entitled, notwithstanding his refusal to arbitrate, to prove the whole amount of loss so stated. The necessity of an appraisement was not absolute upon any construction of the policy. It was not a condition precedent to the right of action, unless demanded. The most that can be said is that either party could demand arbitration within a reasonable time; but, if not so demanded, it was waived. It is not necessary to decide what would, under the circumstances of this case, have been a reasonable time within which to make the demand, if the amount of the loss had been correctly stated in the proofs. It is sufficient to say that a demand made for the first time after the expiration of the full period of 60 days, or, in other words, after the loss had become payable and the right of action had accrued, would have been too late."

It is true that this case goes into the question of waiver, which is not involved in the present case by reason of the fact that it was not pleaded; but nevertheless the court adheres to the doctrine that the time within which the appraisement must be demanded is a reasonable time.

In *Hamilton v. Phoenix Ins. Co.*, 61 Fed. 379, 9 C. C. A. 530, the Circuit Court of Appeals for the Sixth Circuit was considering a case in which a joint demand had been made for an appraisement. It afterward became apparent that the joint appraisement could not be carried out by reason of the varying terms of the different policies. In a lengthy discussion, the court, speaking through Judge Taft, holds that the time within which the appraisal must be demanded is a reasonable time, and states:

"The company demanded a separate appraisal in 17 days after the joint letter was written, and within 60 days after proof of loss by the insured. *Held*, that the question whether the demand for a separate appraisal was made within a reasonable time was a question for the jury."

From this language it is apparent that the court could not have contemplated that the insurance company had 60 days after the proof of loss within which to demand appraisement, as, in the case under consideration there, the demand was made within 60 days after the receipt of the proof of loss, and yet the court holds that whether or not the demand was made within a reasonable time was a question for the jury. In *Astrich v. German American Ins. Co.* (C. C.) 128 Fed. 477, the court, speaking of a policy substantially the same as the one here in question, said:

"The right to have the loss determined by appraisement, where no time is fixed for its exercise, must be de-

manded within a reasonable time. Where, therefore, goods are deteriorating or becoming rotten and unhealthy, a notice to the insured of the necessity for a prompt disposition of them would seem to meet the difficulty, compelling an exercise of the right without abridging it."

This case was affirmed in the Circuit Court of Appeals and a writ of *certiorari* denied by the Supreme Court of the United States, although the questions here involved were not directly considered by the appellate court.

In *Chainless Cycle Co. v. Security Ins. Co.*, 169 N. Y. 304, 62 N. E. 392, the Court of Appeals of New York said:

"It is not the duty of a person whose property is insured by a Standard policy, such as the one before us, to initiate an appraisal, for the contract makes an appraisal a condition precedent to recovery only when one 'has been required' by the insurer. Either party, however, has the right to require an appraisal when there is a disagreement as to the amount of the loss. *Silver v. Assurance Co.*, 164 N. Y. 381, 58 N. E. 284. That right is not indefinite as to time, but must be exercised within a reasonable period, depending upon the facts of the particular case. Neither party can so use the right as to take undue advantage of the other, but both must be in good faith. *Uhrig v. Ins. Co.*, 101 N. Y. 362, 4 N. E. 745; *Bishop v. Insurance Co.*, 130 N. Y. 488 [29 N. E. 844]."

In the opinion the following language, which appears to us particularly applicable to the case at bar, is used (referring to the insurance company).:

"It waited for nearly a month after the fire, and for 12 days after it had received the proofs of loss, without suggesting an appraisal, although the plaintiff had offered to unite in one. When asked by Nordon to 'authorize an

appraisal or send special next Tuesday,' it did not author-
ize an appraisal, but sent its special on the day named.
It, made no demand until it knew that compliance was im-
possible.    *    *    *    The evidence warrants the inference
that it did not desire an appraisal, and had no intention
of requiring one until it thought it could take advantage of
the plaintiff.  Under these circumstances, we cannot say,
as a matter of law, that the demand of the defendant for
an appraisal was reasonable; for it was bound to act in
good faith, and not to remain silent when it was its duty
to speak."

In view of the considerations above stated, and in
view of the fact that the trial court fairly submitted to the
jury the question as to whether or not the insured had sub-
stantially complied with the provisions of the policy, the
jury having found for the plaintiffs, we are unwilling to
hold, as a matter of law, that the defendants, after a lapse
of more than 60 days after the fire, and ten days after
proof of loss, were still within a reasonable time in de-
manding appraisement, and that the act of the insured in
selling the salvage at that time avoided the policy.  The
verdict of the jury carries with it a finding of the neces-
sary facts to sustain the judgment; if there is any evidence
upon which such finding could be based, it should be up-
held.  In this case we hold that there was evidence upon
which the jury might have found that a reasonable time
within which to demand appraisement and inspection had
elapsed at the time insured commenced to sell the salvage.

In regard to the iron-safe and book warranty clause
of the policy, it appears that the insured kept a book ac-
cording to the double-entry system, and for his daybook on
credit sales made slips of paper upon which an entry was
made at the time of the transaction, showing the article
sold and the price received therefor, and that he did not

preserve these slips of original entry, but at the close of each day's business he entered the amount on one book and destroyed the slips. It also appears that, as to the cash sales, no regular book was kept, and the cash received was put in the money drawer and totaled at the end of the day, and such total carried on the journal made at the end of each day. These books were all properly preserved, except the sales slips.

Without further discussion of the propositions involved in this case, it suffices to say that the decision of this court in *Springfield Fire & Marine Ins. Co. v. Halsey,* 52 Okla. 469, 153 Pac. 145, sufficiently covers the question raised, and is conclusive against the contention of the plaintiffs in error.

We have carefully examined the other assignments of error, and find nothing in them requiring an extended discussion or a reversal of the case.

The opinion heretofore filed in this case is withdrawn, and the judgment of the district court of Garvin county is affirmed.

By the Court: It is so ordered.

## On Petition for Rehearing.

It is insisted upon petition for rehearing in this case that the proposition involved in the first paragraph of the syllabus of our decision in this case is "based wholly upon the theory of waiver," which we held was not involved in the case because not pleaded. Not so. Waiver is based upon the failure to exercise a known and existing right, or upon conduct reasonably leading to a belief that such right is not intended to be exercised. In this case we tried to make it clear that, under the clauses of the Standard

insurance policy considered, the right to appraisement and inspection only existed during a reasonable time "from such date as the circumstances of each case may show to be the period at which the desirability or necessity of appraisement or inspection of the goods first arises." The sale of the damaged goods by the defendants was no breach of the provisions of the policy above referred to, except as such sale prevented an appraisement or inspection to which the insurer was entitled. Now, if such right on the part of the company no longer existed when the goods were sold, there was no breach, and the other essentials, such as proof of loss, etc., being proved, there was a "substantial compliance" with the terms of the policy and waiver is not involved. If the policy in express terms limited the right to inspection and appraisement to a period of 20 days after notice of the fire, and that time had expired without a demand for inspection and appraisement, and thereafter the damaged goods were sold, could it be contended that a plea of breach of the policy by reason of the sale of the damaged goods at such time must be met by an express plea of waiver? We think not. The right of the insurer had ceased to exist at the time of the sale. So in this case. The right to an inspection and appraisement under the clauses considered ceased to exist at the end of a reasonable time, and the sale of the damaged goods after that time was no breach of the policy, and it was not necessary to plead a waiver of an alleged breach which was not, in fact, any violation of the rights of the insurer. A party cannot be said to be required to plead waiver against an asserted right, which does not, in fact, exist at the time of the alleged breach of such right.

It is also insisted that we should say, as a matter of law, that a reasonable time to demand appraisement and inspection had not expired after the receipt of the proof of loss. This argument is based upon the assumption that the time within which the appraisement and inspection under these clauses of the policy must be demanded begins to run from the date of the receipt of the proofs of loss. We distinctly did not so hold. The language of the opinion is "from such date as the circumstances of each case may show to be the period at which the desirability or necessity of appraisement or inspection of goods first arises." This date may be that of the receipt of the proof of loss if the disagreement over values or condition of the goods arises then for the first time. On the other hand, it may become apparent long before any proof of loss is filed that the parties cannot agree and that an appraisement will be necessary. The contention that the question of what constituted a reasonable time in this case should be decided as a matter of law is without merit.

It is further insisted that the trial court did not properly instruct upon certain propositions involved in the decision. It is the settled rule of this court that a party cannot complain of failure to instruct unless he has himself offered suitable instructions upon the omitted propositions.

'The petition for rehearing is denied.

By the Court: It is so ordered.